UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| CHRISTINA L. VAN DUSEN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 3:20-cv-396 JD |
| | ) |
| KILOLO KIJAKAZI, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Plaintiff Christina Van Dusen filed applications for disability insurance benefits and supplemental security income on October 1, 2016, alleging disability beginning July 18, 2016. Her date of last insured was December 31, 2020. Following an administrative hearing, the ALJ found that Ms. Van Dusen had one severe impairment, degenerative disc disease, but that she has not been disabled since 2016 as she claims. *See* 20 C.F.R. §§ 404.1520, 416.920. The Appeals Council denied review of the ALJ decision, making the ALJ's decision the final determination of the Commissioner. Ms. Van Dusen now appeals the denial of her claims for disability insurance benefits and supplemental security income. For the following reasons, the Court will remand this matter to the Commissioner for further proceedings consistent with this opinion.

### I.   FACTUAL BACKGROUND

Prior to the onset of her disability, Ms. Van Dusen worked as a Corrections Officer at local correctional facilities for over thirty years. Ms. Van Dusen has been on long-term disability for several years and listed several conditions as disabling including rheumatoid arthritis, fibromyalgia, unexplained weight loss with malaise and nausea, and sleep apnea. (R. 64, 192).

1

Starting in 2016, Ms. Van Dusen lost a significant amount of weight, approximately 70 pounds, and several doctors were incapable of determining why. (R. 192). This undiagnosed medical problem prevented her from working and taking part in normal activities of daily life. Ms. Van Dusen also suffered from fatigue, which prevented her from performing household chores or leaving the home for extended periods of time. (R. 231-32).

Her medical records indicate that she has a long history of chronic pain likely due to fibromyalgia and inflammatory arthritis. (Exhibit 4F). There are numerous records documenting constant pain in her extremities, chronic but generalized pain in her body, and generalized tenderness. *Id*. Her records from treating rheumatologist, Dr. Kovalow-St. John, found she had symptoms of rheumatoid arthritis. (Exhibits 10F, 12F). In her 2017 adult functional report, she indicated that she could not lift anything heavier than a gallon of milk, walking caused her pain in her feet, back, and buttocks, and that she needed frequent breaks to complete tasks. (R. 228-35). Ms. Van Dusen stated that she had attended physical therapy, but it was not helpful for her. (R. 56). Although her dramatic weight loss eventually stopped and she was able to stabilize her weight, Ms. Van Dusen continued to struggle with chronic pain into 2018 as demonstrated by her medical records and continues to struggle with it today.

At the hearing before the ALJ, Ms. Van Dusen testified that due to her exhausting pain she was unable to work or do a whole lot. She explained that in her previous position as a corrections officer she worked in the prison tower and on the perimeter. (R. 64). She stated that her most recent job involved walking, driving, and checking gates, and that if she had to work now, it would knock her over. (R. 56). She explained that she felt like she was unable to return to her previous position because she was way too fatigued and that there was no way she could work 12 hours. (R. 65).

2

## II. STANDARD OF REVIEW

Because the Appeals Council denied review, the Court evaluates the ALJ's decision as the final word of the Commissioner of Social Security. *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). The Court will affirm the Commissioner's denial of disability benefits if it is supported by substantial evidence. *Craft v. Astrue,* 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). It must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue,* 478 F.3d 836, 841 (7th Cir. 2007). Thus, even if "reasonable minds could differ" about the disability status of the claimant, the Court will affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue,* 529 F.3d 408, 413 (7th Cir. 2008).

In this substantial-evidence determination, the Court does not reweigh evidence, resolve conflicts, decide questions of credibility or substitute the Court's own judgment for that of the Commissioner. *Lopez v. Barnhart,* 336 F.3d 535, 539 (7th Cir. 2003). The Court does, however, critically review the record to ensure that the ALJ's decision is supported by the evidence and contains an adequate discussion of the issues. *Id.* The ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection; he may not ignore an entire line of evidence that is contrary to his findings. *Zurawski v. Halter,* 245 F.3d 881, 887 (7th Cir. 2001). The ALJ must also "articulate at some minimal level his analysis of the evidence" to permit informed review. *Id.* Ultimately, while the ALJ is not required to address every piece of evidence or testimony presented, he must provide a "logical bridge" between the evidence and his conclusions. *Terry v. Astrue,* 580 F.3d 471, 475 (7th Cir. 2009).

### III. STANDARD FOR DISABILITY

Disability benefits are available only to individuals who are disabled under the terms of the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). A claimant is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations contain a five-step test to ascertain whether the claimant has established a disability. 20 C.F.R. §§ 404.1520, 416.920. These steps require the Court to sequentially determine:

1. Whether the claimant is currently engaged in substantial gainful activity;

2. Whether the claimant has a medically severe impairment;

3. Whether the claimant's impairment meets or equals one listed in the regulations;

4. Whether the claimant can still perform relevant past work; and

5. Whether the claimant can perform other work in the community.

*Id.; Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). At step three, if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations, the Commissioner acknowledges disability. *See* 20 C.F.R. §§ 404.1520, 416.920. However, if a listing is not met or equaled, the ALJ must assess the claimant's residual functional capacity ("RFC") between steps three and four. The RFC is then used to determine whether the claimant can perform past work under step four and whether the claimant can perform other work in society at step five. *See id.* The claimant has the burden of proof in steps one through four, while the burden shifts to the Commissioner at step five to show

that there are a significant number of jobs in the national economy that the claimant is capable of performing. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

## IV. DISCUSSION

Ms. Van Dusen now challenges the ALJ's decision for improperly evaluating opinion evidence, including the treating physician's opinion, and argues the vocational findings were not supported by substantial evidence. [DE 15 at 3]. Ms. Van Dusen challenges the evidentiary weight assigned by the ALJ to the opinion of long-term treating physician, Dr. Kneller, and to the non-examining medical expert, Dr. Duby. The Court agrees that the ALJ failed to adequately support her reasons for giving Dr. Kneller's opinions "little weight" and therefore finds that this error necessitates remand. The Court also addresses some issues that occurred when the ALJ considered Ms. Van Dusen's past relevant work.

### A. Weight of Medical Opinion Evidence

An RFC assessment is to be based upon the consideration of all relevant evidence in the case record, including medical evidence. SSR 96-5p. Treating physicians' opinions on the nature and severity of a claimant's medical condition are "entitled to controlling weight if [they] are well supported by medical findings and consistent with other record evidence." *Lambert v. Berryhill*, 896 F.3d 768, 774 (7th Cir. 2018).[1] Critical to a meaningful review by this Court is the ALJ's construction of "an accurate and logical bridge from the evidence to his conclusion." *Terry*, 580 F.3d at 475. If an ALJ does not give the treating physician's opinion controlling weight, the ALJ must apply the factors set forth in the regulations to determine what other weight to give the opinion. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see also Yurt v. Colvin*, 758 F.3d 850, 860 (7th Cir. 2014) (requiring an explicit discussion of certain § 404.1527(c)(2)

---

[1] This treating-physician rule applies only to claims filed before March 27, 2017. *Gerstner v. Berryhill*, 879 F.3d 257, 261 (7th Cir. 2018). Ms. Van Dusen filed her claim in 2016, therefore the rule applies here.

factors on remand). The factors are whether there is an examining relationship; whether there is a treatment relationship, and if so, the length of the relationship, the frequency of examination, and the nature and extent of the relationship; whether the opinion is supported by relevant evidence and by explanations from the source; the consistency of the opinion with the record as a whole; whether the opinion was offered by a specialist about a medical issue related to his or her area of specialty; and any other factors that tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(2)–(6), 416.927(c)(2)–(6). Finally, "[a]n ALJ must offer good reasons for discounting the opinion of a treating physician." *Israel v. Colvin*, 840 F.3d 432, 437 (7th Cir. 2016) (citing *Moore v. Colvin*, 743 F.3d 1118, 1127 (7th Cir. 2014)).

The Court finds that the ALJ failed to apply the factors as required by the regulations when she discounted the opinion of the treating physician in this case and failed to build an accurate and logical bridge from the evidence to her conclusion. Dr. G. Larsen Kneller has been Ms. Van Dusen's primary care physician since 1989. (R. 801). Throughout the relevant time period, Dr. Kneller personally managed Ms. Van Dusen's health issues, including ordering tests and treatments as well as tracking and prescribing medications to address her medical conditions. (Exhibits 2F, 4F, 8F, 11F, 16F). Dr. Kneller also referred Ms. Van Dusen to several specialist physicians to further care for her medical needs. (Exhibits 5F, 6F, 12F, 13F, 17F, 18F). In 2016 and again in 2017, Dr. Kneller stated that Ms. Van Dusen was unable to work. (Exhibits 1F, 9F). In his 2017 Medical Assessment-Questionnaire Form, Dr. Kneller expected her impairments/disability to last more than a year, noted that she could not sit or stand for longer than a half hour at a time, and stated that she would need to lie down during the day due to pain in her feet, back, pelvis, joints, and muscles. (R. 800). Despite the lengthy amount of time that

Dr. Kneller has been managing Ms. Van Dusen's health issues including her problems with rheumatoid arthritis and fibromyalgia, the ALJ gave his opinion little weight. (R. 26).

In dismissing his opinion, the ALJ only stated the following: "The undersigned assigns this opinion little weight, as the treatment records from this provider show the claimant's conditions were stable with medication with normal findings on physical examination (*see generally* 2F, 4F, 11F, 16F)." *Id*. Notably, the ALJ failed to address the regulatory factors when considering Dr. Kneller's opinion, but the ALJ also erred by assuming that since Ms. Van Dusen's conditions were stable that Dr. Kneller's recommended functional limitations were not appropriate. In her opinion, the ALJ noted that Ms. Van Dusen's "opioid treatment was low dose without any real side effects," and that Ms. Van Dusen's treating physicians had not recommended any greater treatment modalities, and that her neurosurgeon did not recommend surgery. (R. 25). The ALJ then concluded that Ms. Van Dusen's "conservative treatment suggests that her symptoms and limitations are not as severe as she alleges." *Id*. But this conclusion is premised on the ALJ's own independent medical determination—*not* that of an expert—that Ms. Van Dusen's chronic conditions must be unstable or that she must require recommendations for surgery or higher doses of narcotics for her symptoms to be disabling. *See Fields v. Colvin*, 213 F. Supp. 3d 1067, 1072 (N.D. Ind. 2016) (remanding where ALJ assumed claimant's headaches were not disabling because they never required hospitalization); *see also Myles v. Astrue*, 582 F.3d 672, 677 (7th Cir. 2009) (ALJ improperly inferred that claimant was not experiencing significant problems because doctors had not prescribed certain treatment). By doing this, the ALJ improperly substituted her own opinion regarding Ms. Van Dusen's medical conditions and has not provided an adequate "logical bridge" between the evidence and her conclusions. *See Terry*, 580 F.3d at 475.

7

Here, the ALJ seems to assume that the conservative treatment of Ms. Van Dusen's chronic conditions suggested that her impairments were not as severe as she alleged. (R. 25). The ALJ concluded that since surgery was not recommended for Ms. Van Dusen and since she received low doses of opioid treatments that she was not as functionally limited as her treating physician stated she was. *Id*. But Ms. Van Dusen's treatment records make clear that the reason surgical intervention was not recommended was because the medical evidence did not warrant surgery. Dr. Shaikh, a neurosurgeon, who saw her for back pain specifically told her that "in general spinal surgery is best for [symptoms] of nerve compression, less so for back pain." (R. 940). Thus, surgery was not recommended to Ms. Van Dusen to help her manage her chronic back pain.

Moreover, the ALJ also seemingly discounted Ms. Van Dusen's symptoms and limitations because she is on low dose narcotics but failed to recognize the reasons for why that may be so. For example, Ms. Van Dusen explained at the hearing that her past prescribed medicine for her arthritis led to extreme weight loss and that she specifically requested a fentanyl patch because they are less likely to be abused. (R. 57). This is also notable because Dr. Duby, the medical expert who reviewed Ms. Van Dusen's medical records, stated that he thought she "actually has real pain." (R. 49). Finally, Ms. Van Dusen explained at the hearing that since she was under a contract with her family doctor for her pain medication, she was not allowed to get pain medication from anyone else. (R. 66). Here, the ALJ improperly substituted her own, non-professional opinion for that of Ms. Van Dusen's treating physician and other specialists who saw her. *See Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007) ("[A]n ALJ cannot play the role of doctor and interpret medical evidence."). This leads the Court to infer that the ALJ assumed that disability requires a showing of recommended surgery or more aggressive

interventions such as higher doses of narcotics, but she cited no medical opinion to support that conclusion or help explain her inference.

Finally, the ALJ stated in her opinion that Dr. Kneller's treatment records show that Ms. Van Dusen's condition was stable with medication and with normal findings on physical examination. But that belies the information that Dr. Kneller learned from the specialists that he referred Ms. Van Dusen to for additional care. Dr. Kneller referred Ms. Van Dusen to numerous specialists to help with her chronic conditions including to a rheumatologist, Dr. Kovalow-St. John, to help with her severe rheumatoid arthritis and fibromyalgia. (R. 598). In July of 2017, Dr. Kovalow-St. John noted that Ms. Van Dusen stated that her feet felt like they were broken – like the bones were coming through her feet and also stated that she felt like she was unable to do anything. (R. 803). In November of 2017, Dr. Kovalow-St. John noted Ms. Van Dusen complained of pains everywhere and stated that "[s]he is tender virtually everywhere I touch." (R. 837). The record reflects more medical records demonstrating that her pain continued through 2018. In May of 2018, she received an MRI of her spine due to low back pain radiating into both of her hips and thighs. (Ex. 14F). In October, a neurosurgeon noted that Ms. Van Dusen had not been relieved of back pain despite multiple injections and therapy. Finally, in November of 2018, Dr. Baccus, a pain management specialist, noted that Ms. Van Dusen was reporting a pain level of 7-8 out of 10. (R. 945). She indicated in the office visit that her pain is constant, and it is aggravated by sitting, standing, walking lifting, bending, twisting, stepping up/down, driving, and getting up from a sitting position, but did note that her pain improved with lying down. *Id*. Dr. Baccus found her fibromyalgia to be normal but also noted that she had some back pain. (R. 946). As Ms. Van Dusen's referring physician, Dr. Kneller had the benefit of receiving these medical notes from other doctors and incorporating them into his assessment of her

functional capabilities. The ALJ seemed to overlook that aspect of their relationship simply because his own treatment records indicated that her conditions were stable. This is insufficient to meet the requirements under the regulations. Accordingly, it cannot be said that the ALJ in this case offered "good reasons" for discounting this treating physician's opinion. *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011).

What the ALJ fails to recognize here is that even if Ms. Van Dusen's physical conditions were stable with medication that does not necessarily mean she could manage a full day of work. The limitations identified by Dr. Kneller were notable and likely would prevent her from working her previous job as a corrections officer.[2] Moreover, Dr. Kneller had the benefit of seeing Ms. Van Dusen over a long period of time and was in the best position to evaluate what she was capable of doing on a daily basis. Reviewing courts "give more weight to the opinions of treating physicians because they are most familiar with the claimant's conditions and circumstances." *Israel*, 840 F.3d at 437. Here, the regulatory factors support granting Dr. Kneller's opinion greater weight. Ms. Van Dusen had a longstanding medical relationship with him—spanning over thirty years, his treatment records reflect chronic pain conditions despite those conditions being stable. In 2015, Dr. Kneller wrote in a treatment record that Ms. Van Dusen was "probably getting to the point where she needs to think about applying for disability." (R. 442). The following year, he certified to the State of Indiana that she could not work. (R. 267). Notably, in March of 2017, Dr. Kneller wrote the following, "Conditions otherwise are stable / under good control. I do feel she is disabled and unable to work with all her chronic

---

[2] The ALJ recognized that in June 2017, Dr. Kneller assessed Ms. Van Dusen's impairments and found that she could only sit or stand for six to eight hours and could only do those activities for thirty minutes at a time. He also opined that she had difficulty with ambulation, that she had difficulty performing motions such as bending, squatting, kneeling, and turning her body. He also indicated that she could only occasionally reach up above her shoulders and could carry less than five pounds. He attributed these limitations to fibromyalgia and inflammatory arthritis. (R. 26).

10

conditions and anorexia." (R. 597). Thus, her treating physician while recognizing that her medical conditions were stable, also found that she was unable to work.

The issue of whether a claimant qualifies for benefits "depends on the applicant's physical and mental ability to work full time, and that is something to which medical testimony is relevant and if presented can't be ignored." *Garcia v. Colvin*, 741 F.3d 758, 760 (7th Cir. 2013). Moreover, "[a]n ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding." *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). Granted, the ALJ is not bound by the doctors' broad conclusions that Ms. Van Dusen could not work. *See Bjornson v. Astrue*, 671 F.3d 640, 647-48 (7th Cir. 2012) ("'[T]he *final* responsibility for deciding' residual functional capacity (ability to work—and so whether the applicant is disabled) 'is reserved to the Commissioner.'") (quoting § 404.1527(e)(2)). But here, the treating physician provided a medical assessment—not just opinions regarding disability—of Ms. Van Dusen's physical capabilities and functional limitations that should not have been ignored. (Ex. 9F). *See Lambert*, 896 F.3d at 776 (remanding where ALJ discounted as an improper disability determination treating doctor's most recent opinion that claimant's chronic back pain limited him from performing sedentary work); *Lopez v. Berryhill*, 340 F. Supp. 3d 696, 704-05 (N.D. Ill. 2018) (remanding where ALJ rejected as an improper disability determination treating source's medical assessment of claimant's inability to reach overhead and lift certain weights). Thus, remand is required here.

    **B.**    **Alternatively, the ALJ Failed to Justify the Weight Given to Dr. Duby's Opinion**

The Commissioner argues that Dr. Kneller's opinion was not supported by treatment records and that when presented with conflicting opinion evidence from Dr. Duby, the ALJ

reasonably gave Dr. Duby's opinion greater weight. In the response brief, the Commissioner also recognized the error that Dr. Duby made in the hearing regarding the lack of a report of Ms. Van Dusen's tender points but argues that it does not significantly detract from his testimony regarding the overall lack of documentation during the period at issue. The Court respectfully disagrees. At the hearing, the ALJ asked Dr. Duby for his opinion regarding Ms. Van Dusen's functional limitations, which he provided, but incorrectly noted there were no records of tender points,[3] and the ALJ used those limitations in the hypothetical question to the VE and in the RFC assessment in her opinion. (R. 23, 46, 68-69). Not only was Dr. Duby wrong about the medical records regarding Ms. Van Dusen's fibromyalgia tender points (although the Court recognizes several preceded the relevant time period), but he also explained that despite finding a lack of documented evidence of inflammatory arthritis he still "felt" that she did likely suffer from it. (R. 41-42, 43). In continuing this discussion, Dr. Duby stated the following:

> "The reason why I feel that she actually does have an inflammatory arthritis is that one diagnosis that hasn't been considered are the group of inflammatory arthritises that affect the back, not degenerative arthritis affecting the back. They're referred to as spondyloarthritis. And in 18-F – and the patient has a long history of [] back pain . . . . So, again, I think she probably has something; it just hasn't been addressed, I think, appropriately."

(R. 43-44). The Commissioner indicates that Dr. Duby "therefore fashioned 'reasonable restrictions' that addressed symptoms [Ms. Van Dusen] might have from inflammatory arthritis and fibromyalgia." [DE 18 at 13].

The Court agrees with Ms. Van Dusen that the ALJ's deference to Dr. Duby's medical opinion especially in lieu of affording controlling weight to Dr. Kneller's opinion is problematic. As Ms. Van Dusen points out, and the Court agrees, there is sufficient evidence in the record to

---

[3] In the hearing, Dr. Duby stated the following: "Her diagnosis of fibromyalgia is also not well documented, in terms of there's no reference to the 18 tender points that we normally refer to." (R. 43).

12

support a finding of fibromyalgia including a treatment note where 11/18 tender points were observed. (R. 404, 435, 622, 652, 785, 805, 841). Despite this, Dr. Duby stated in the hearing that Ms. Van Dusen's "diagnosis of fibromyalgia is also not well documented, in terms of there's no reference to the 18 tender points that we normally refer to." (R. 43). Moreover, Dr. Duby thought that she likely had inflammatory arthritis that had been *misdiagnosed* as degenerative arthritis. (R. 44). Despite, Dr. Kneller's extremely long treatment record of Ms. Van Dusen, the ALJ found Mr. Duby's findings to be more persuasive and assigned his opinion "great weight, as he supported his opinion with the medical evidence of record and his expertise." (R. 27). But the Court notes that Dr. Duby was incorrect regarding Ms. Van Dusen's fibromyalgia diagnosis and that despite noting a lack of evidence to support his conclusion, he "felt" that she suffered from inflammatory arthritis.

The Commissioner argues that the ALJ was presented with conflicting opinion evidence, but that does not appear to be the case here. This is not a situation where well-supported contrary evidence was introduced thereby making the treating physician's opinion "just another piece of evidence for the ALJ to evaluate," this is a situation where the non-treating medical expert was wrong about one diagnosis and apparently lacked evidence for another diagnosis that he considered to be a misdiagnosis. *See Bates v. Colvin*, 736 F.3d 1093, 1099-1100 (7th Cir. 2013). Generally, more weight is given to the opinion of a source who has examined a patient than to the opinion of a source who has not, and more weight is given to treating sources who are most able to provide "a detailed, longitudinal picture" of a person's impairments. *See* 20 C.F.R. § 416.927(c)(1)-(2). But that did not happen here, and the ALJ's explanation for discounting Dr. Kneller's opinion is not supported by substantial evidence. And even more problematic, the ALJ based the RFC almost entirely on Dr. Duby's assessment of Ms. Van Dusen. Thus, remand is

13

required because the RFC analysis was affected by the ALJ's credibility analysis, which itself was not supported by substantial evidence. *See Pepper v. Colvin,* 712 F.3d 351, 367 (7th Cir. 2013); *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008). This is especially important where limiting Ms. Van Dusen to sedentary work would have resulted in an award of disability benefits.

      C.      **Additional Considerations on Remand: Analysis at Steps Four and Five**

Ms. Van Dusen also argues that the vocational findings are founded upon legal error and are not supported by substantial evidence. More specifically, she argues that the ALJ's analysis falls short because it contains no specific findings about the requirements of her past work and no function-by-function comparison of her current abilities with the demands of the past work. [DE 15 at 18]. At the hearing, the ALJ posed a hypothetical to the VE based on the eventual RFC and the VE found that it would allow for Ms. Van Dusen to complete her past work as performed. (R. 69). Then the ALJ and the VE discussed various hypotheticals based off of her past work as a correction officer changing various functionalities, exertion levels, number of breaks, and work tasks. (R. 71). Since it was found that Ms. Van Dusen could perform her past work, the analysis stopped at step four and no other jobs were analyzed as is customary at step five. In her opinion, the ALJ noted that the position of a Corrections Officer is medium, semi-skilled work, but Ms. Van Dusen performed it at both the sedentary and light levels of exertion for the past 15 years. (R. 27). The ALJ also explained that the VE testified that Ms. Van Dusen had the ability to perform her past work as she performed it at the sedentary level of exertion.

Under the regulations, the ALJ must undertake an inquiring when determining Ms. Van Dusen's ability to perform past relevant work:

> Determination of the claimant's ability to do past relevant work requires a careful appraisal of (1) the individual's statements as to which past work requirements can

> no longer be met ... (2) medical evidence establishing how the impairment limits ability to meet the physical and mental requirements of the work; and (3) in some cases, supplementary or corroborative information from other sources such as employers, the *Dictionary of Occupational Titles, etc.,* on the requirements of the work as generally performed in the economy."

SSR 82–62. Further, "every effort must be made to secure evidence that resolves the issue as clearly as circumstances permit." *Kuykendall v. Astrue*, No. 1:08-CV-0162-LJM-DML, 2009 WL 3872040, at *4 (S.D. Ind. Nov. 18, 2009). The ALJ in Ms. Van Dusen's case failed to develop the record regarding the actual physical and mental demands of her past relevant work as a Corrections Officer. The ALJ relied completely on Ms. Van Dusen's description of the work and the VE's testimony that she could perform it at the sedentary level of exertion. But "[t]o determine whether a claimant is physically capable for returning to his or her past relevant work, the ALJ must ascertain the demands of that work in relation to the claimant's *present* physical capacities." *Figarelli v. Berryhill*, No. 17-CV-1017, 2018 WL 6523027, at *7 (E.D. Wis. Dec. 12, 2018) (emphasis added) (quoting *Strittmatter v. Scheweiker*, 729 F.2d 507, 509 (7th Cir. 1984)). Moreover, the ALJ also has a duty to explore any vocational inconsistencies that are apparent at the time of hearing. *Overman v. Astrue,* 546 F.3d 456, 464 (7th Cir. 2008).

But here, the Court finds that there was insufficient evidence or even discussion of the demands or relevant factors related to Ms. Van Dusen's present capabilities to work as a corrections officer. For example, in the hearing, Ms. Van Dusen stated two times that she was incapable of working a 12-hour workday. (R. 55, 65). Notably all of the limitations in the RFC are analyzed in the context of an 8-hour workday – "[t]he claimant is limited to standing and walking for a total of three hours in the workday." (R. 23). It is not clear to the Court if Ms. Van Dusen's previous position required 12-hour shifts, which certainly would make sense in the context of a prison, or if there are options for a regular 8-hour day. It is hard to know because

15

there was such a limited discussion in the hearing regarding this information and the limited discussion is what informed the ALJ's finding that Ms. Van Dusen could perform past relevant work. It is also not clear whether Ms. Van Dusen could perform her past work with the level of fatigue she claims to be suffering from. The VE testified that an additional 20-minute break beyond the normal breaks provided would not allow for her to complete her past work. (R. 71). The ALJ also erred in failing to request more specific information before relying on the VE's testimony that the Corrections Officer position was consistent with sedentary exertional work as classified in the Dictionary of Occupational Titles and as Ms. Van Dusen performed it. (R. at 27). Thus, the Court disagrees that the ALJ and the VE had sufficient information about Ms. Van Dusen's previous work as she performed it to compare to the RFC assessment.

The Commissioner argues that the ALJ and VE considered the limitations in the RFC compared to the demands of Ms. Van Dusen's previous position as a Corrections Officer. The Commissioner asserts that the ALJ need not consider extraneous factors that are not related to the limitations caused by the claimant's impairments. But the ALJ's discussion with the VE regarding Ms. Van Dusen's past work was perfunctory and she does not fully define the requirements of her past work or compare them to Ms. Van Dusen's present capabilities. An ALJ's decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *Lopez*, 336 F.3d at 539. Therefore, the ALJ should consider these matters upon remand as well.

## CONCLUSION

The remedy for the ALJ's shortcomings is further consideration, not the immediate award of benefits. And so, for the reasons stated herein, the Court **REVERSES** the Commissioner's

decision and **REMANDS** this matter to the Commissioner for further proceedings consistent with this opinion. The Clerk is directed to prepare a judgment for the Court's approval.

SO ORDERED.

ENTERED: August 11, 2021

                                              /s/ JON E. DEGUILIO
                                              Chief Judge
                                              United States District Court